In the Matter of Trustees of the Masonic Hall and Asylum Fund, Appellant. Liggett Drug Company, Inc., Respondent.

First Department, February 24, 1956.

*William M. Kufeld* of counsel (*Herman M. Glassner* with him on the brief; *Carb, Luria, Glassner & Cook,* attorneys), for appellant.

*Mendel Lurie* of counsel (*Bernard H. Goldstein* and *Lawrence A. Cohen* with him on the brief; *Gettner, Simon & Asher,* attorneys), for respondent.

RABIN, J. This proceeding, brought pursuant to subdivision 1 of section 4 of the Business Rent Law (L. 1945, ch. 314, as amd.), for an increase in rent, was instituted by the service of a petition on the 3rd day of February, 1953. The only tenant involved occupied 39,800 square feet of space constituting the whole of the 12th, 13th, 14th and 15th floors of one of the two connected buildings owned by the landlord and which are the subject of this proceeding. After trial the court dismissed the petition, finding that there was no deficit in income after making due allowance for the cost of operation of the premises, together with an 8% return on the value of the premises as found by the court.

It appears that for the calendar year 1952 — which is the year preceding the filing of the petition — the actual cost of operation amounted to $445,701.95. The court allowed only $350,000. That allowance was not based on the cost of operation during the test year, but rather, as the court stated, " as of the trial date * * * because of the peculiar nature of the subject property." The property consisted of two structures connected on all floors and heated by one heating unit. The 23rd Street building is rented chiefly to commercial tenants. The building on the 24th Street side is occupied in the main by Masonic Lodges which are affiliated to some extent with the landlord. It appears that prior to the date of trial, the buildings were heated and electricity generated through the use of an obsolete coal fire heating system which at the time of trial had been substantially converted to an oil burning system. The generation of electricity has been discontinued. The savings in operation resulting from such changes amounted to approximately $100,000. During the test year the Masonic Lodges paid a rental of about $121,000. At the time of trial that rental had been increased to somewhat above $165,000. Apparently, because of these circumstances, the court in fixing the expense of operation and the income upon which to rest its decision,

chose to fix them as of the time of trial rather than as of the test year, namely, the calendar year, 1952. In *Matter of Alibel Corp. (Compo Shoe)* (285 App. Div. 140, 143) we held that the relevant factors in the fixing of the fair rental value as of the date of the application, as we must do here, " are the items of income and expenses embraced in the landlord's bill of particulars supplied for the preceding year." However, we also held that, " Changes in circumstances having prospective effect but fixed in amount and determined as to obligation or liability prior to the filing of the petition would also be relevant and material."

The landlord in its bill of particulars stated that the work of conversion from coal heating to oil heating was in progress. The bill of particulars which was filed shortly after the petition, speaks of the date of the petition. It is a fair presumption, therefore that the determination to convert was arrived at prior to the date of the petition and the testimony shows that the amount of the prospective savings as the result of such forthcoming conversion was substantially arrived at prior to the making of that determination. Accordingly, in keeping with the *Alibel* case (*supra*) we may fix the expense at a figure which would fairly represent the reasonable cost of operating the premises as of the date of the completion of the conversion.

The experts are not at great variance in their estimates as to that cost, the landlord's experts testifying that the cost would be $361,000 and the expert for the tenant estimating the cost to be $348,756.49. The trial court fixed the sum of $350,000 as the reasonable expense of operation for the purpose of this proceeding. Such finding is supported by the evidence.

The experts were wide apart in their estimates of the value of the premises. The expert for the landlord testified that as of January 1, 1953, the value was $2,920,000. The tenant's expert gave two figures — one before the heating conversion in the amount of $1,325,000, and another after the conversion in the amount of $1,775,000. The trial court chose to accept as the value of the buildings the sum which appeared on the assessment rolls, namely, $2,050,000 plus an increment of $975,000 or a total of $3,025,000. This increment was arrived at by capitalizing at 8% an amount which the court found the landlord would have been obliged to pay for municipal real estate taxes were it not exempt from such payment because it used the proceeds derived from these premises for charitable and educational purposes. The court held that the benefit of this exemption belongs to the landlord and not the tenants.

While we agree that the benefit of the exemption should go to the landlord and not to the tenants, in the circumstances here appearing we do not believe that the estimated taxes should be capitalized and added to the value of the buildings. Such value would not represent a true value. The saving of taxes can only be had by one who enjoys tax exemption as does the landlord. Moreover, there is no necessity for capitalizing the amount of taxes thus saved. It may and should be added to the allowable return of the landlord.

The value of the buildings should be fixed in the sum of $2,050,000 as found by the court prior to increasing it by the sum of $975,000. That is the value presumed by statute to be the value of the premises in a proceeding such as this and there is no reason to disturb the finding of the court in that respect. However, in view of the fact that consideration was given to the prospective savings in operation as the result of the conversion there must be added to the value of the building the cost of the improvement necessary to convert from coal to oil. The tenant's expert in establishing the value of the building after the conversion set a figure of $450,000 for that capital improvement. That would bring the value of the property to $2,500,000 for the purpose of this proceeding.

The landlord would be entitled to an 8% return on that sum. That is the return fixed by the statute as presumptively fair and that is the amount fixed by the trial court in its decision. Allowing the landlord such return, it would be entitled to receive $200,000 in addition to the $350,000 cost of maintenance, making the sum of $550,000. Adding the sum of $75,850, the tax saving, the total sum which the landlord should receive, based upon all of the factors developed in this proceeding, is $625,850.

The gross income from the premises during the test year, according to the bill of particulars, was $475,348.46. Using that figure there would be a deficit in the net return in the sum of $150,501.54. The tenants, however, claim that in computing the income the landlord did not take into consideration an increase of $26,175 received from two other commercial tenants. This increase did not become effective until after the filing of the petition. However, while there is no evidence that they were fixed prior to such filing, that may be presumed inasmuch as such increases appear in the bill of particulars. The tenant also complains that the Masonic Lodges affiliated with the landlord were given favored treatment in the fixing of their rentals and that such treatment was to the tenant's detriment. It is asserted that the sum of $121,375 paid by these lodges was

grossly inadequate in view of the special service rendered to them and also because of the nature of the lodge rooms, some of them being two stories in height and one being three stories in height. The tenant's expert fixed the sum of $194,869.71 as being a fair rental to be charged for the premises occupied by those lodges. There is no supportable basis for a higher figure. Accepting the tenant's position with respect to both of these items and giving them effect in computing the gross rental with which the landlord is to be charged we have the sum of $575,018.17. That would still leave a deficit of $50,831.83 as against what the landlord should receive.

In determining what this tenant should pay in light of the foregoing, we must give '' due consideration to the amount and character of the business space used or occupied by such tenant, provided, however, that the gross rentals from all such business space shall not exceed a fair and reasonable proportion of the gross rentals from the entire building or other rental area.'' (§ 4, subd. 1.) The experts for the respective parties differed in their estimates as to what would be fair as the percentage of the '' gross rental from the entire building '', to be borne by the tenant for the space it occupies. The landlord's expert thought it should be fixed at 14.408%, while the expert for the tenant estimated that 11.844% would be the fair percentage. Taking into consideration the nature of the space occupied by the Masonic Lodges and considering all of the other factors we conclude that the tenant should bear the lesser percentage, i.e., 11.844% of the landlord's allowable return. That would fix the sum of $74,125.67 as being a fair rental for this tenant in connection with this proceeding.

Accordingly, the final order dismissing the petition should be reversed, the findings made herein substituted for the findings of the court below and final order directed fixing the sum of $74,125.67 as the fair rental for the premises occupied by the tenant, commencing as of February 3, 1953.

Settle order on notice.

PECK, P. J., BASTOW and FRANK, JJ., concur.

Order dismissing the petition unanimously reversed, the findings made in the opinion herein substituted for the findings of the court below, and final order directed fixing the sum of $74,125.67 as the fair rental for the premises occupied by the tenant, commencing as of February 3, 1953. Settle order on notice. ∎